FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KITRA Y.,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br><div align="center">Defendant.</div> | NO: 2:17-CV-409-RMP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment from Plaintiff Kitra Y., ECF No. 11, and the Commissioner of Social Security (the "Commissioner"), ECF No. 12. Plaintiff sought judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claims for supplemental security income and disability insurance benefits under Title XVI of the Social Security Act (the "Act"). *See* ECF No. 11. The Court has reviewed the motions and the administrative record, and is fully informed. The motions were heard without oral argument. For the reasons stated in this order, the Court grants Defendant's

motion for summary judgment, ECF No. 12, and denies Plaintiff's cross-motion, ECF No. 11.

## BACKGROUND

### A. Plaintiff's Claim for Benefits and Procedural History

Plaintiff applied for disability insurance benefits through an application filed on January 25, 2014.  Administrative Record ("AR") 609-15.[1]  Plaintiff applied for supplemental security income through an application filed on March 24, 2014.  AR 616-22.  Plaintiff was 30 years old at the time that she applied for benefits.  She has at least a high school education.  AR 29.  Plaintiff alleges that her onset date was June 21, 2011.[2]  AR 230.  The Commissioner initially denied Plaintiff's applications for disability insurance benefits and supplemental security income, and denied Plaintiff's applications upon reconsideration.  AR 432-47, 453-64.  Plaintiff timely requested a hearing.  AR 465-66.  Three hearings were conducted before Administrative Law Judge ("ALJ") Lori Freund on July 19, 2016; January 4, 2017; and February 13, 2017.

### B. July 19, 2016 Hearing

A hearing took place in Spokane, Washington, before Administrative Law Judge ("ALJ") Lori Freund on July 19, 2016.  AR 226-69.  Plaintiff appeared in

---

[1] The AR is filed at ECF No. 8.

[2] Plaintiff previously applied for disability insurance benefits and supplemental security income and her application was denied on June 20, 2011.  AR 344-65.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

person and was represented by attorney Lora Lee Stover.[3]  Plaintiff responded to questions from her attorney and Judge Freund.  A medical expert, Dr. Lynne Jahnke, appeared telephonically.

**C. January 4, 2017 Hearing**

A second hearing took place in Spokane, Washington, before Judge Freund on January 4, 2017.  AR 270-303.  Plaintiff again appeared in person and was represented by attorney Lora Lee Stover.  Plaintiff responded to additional questions from her attorney and Judge Freund.

**D. February 13, 2017 Hearing**

A third hearing took place telephonically in Spokane, Washington, before Judge Freund on February 13, 2017.  AR 304-43.  Plaintiff appeared telephonically and was represented by attorney Lora Lee Stover.  Plaintiff responded to further questions from her attorney and Judge Freund.  A medical expert, Dr. Robert Smiley, and a vocational expert, Doug Lear, also appeared telephonically at the hearing.

**E. ALJ's Decision**

On April 18, 2017, the ALJ issued an unfavorable decision for Plaintiff.  AR 15-40.  Utilizing the five-step evaluation process, Judge Freund found:

---

[3] Attorney Lora Lee Stover also represents Plaintiff on appeal.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3

**Step one:** Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 21, 2011. AR 21.

**Step two:** Plaintiff has the following severe impairments: morbid obesity, degenerative disc disease with foot drop, and sleep apnea. AR 21.

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had the RFC to

> perform less than the full range of sedentary work. The claimant can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently. She can stand and walk up to 2 hours in an 8-hour workday, however, maximum amount of standing/walking at one time is limited to 15 minutes. She can sit up to 6 hours in an 8-hour workday. There would need to be a change in position for a few minutes and at a 30-minute interval. She can rarely operate foot controls with the left lower extremity, can never climb ladders, ropes, or scaffolds, and never crawl. She can occasionally climb ramps or stairs, up to a flight, and with use of a handrail. She can occasionally balance, stoop, kneel, and crouch. She would need the occasional use of a handheld assistive device, such as a cane. She needs to avoid all unprotected heights, all hazardous machinery and operational control of moving machinery. She needs to avoid concentrated exposure to airborne irritants, such as fumes, odors, dusts, gases, etc. She needs to avoid exposure to extreme temperatures, both cold and heat, excessive wetness and humidity, as well as, [sic] concentrated exposure to vibration.

AR 25.

**Step four:** Plaintiff was capable of performing past relevant work as a customer service representative because it did not require the performance of work-related activities precluded by Plaintiff's RFC. AR 29 (citing 20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965). The ALJ considered Plaintiff's age, education, work experience, and RFC, and additionally found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 29-30.

**Step five:** Plaintiff was not disabled for purposes of the Social Security Act from June 21, 2011, through the date of the ALJ's decision. AR 30.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 13, 2017. AR 1-7. Plaintiff now seeks judicial review.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the

Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

**C. Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one determines if she is engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that she has performed in the past. If the plaintiff is able to perform her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of her residual functional capacity and age, education, and past

work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

**A. Did the ALJ reversibly err in assessing Plaintiff's credibility and giving no clear and convincing rationale for not crediting Plaintiff's testimony?**

**B. Did the ALJ reversibly err in assessing Plaintiff's residual functional capacities?**

**C. Did the ALJ reversibly err by failing to present appropriate hypothetical questions to the vocational expert?**

**D. Did the ALJ reversibly err in finding Plaintiff capable of performing her past relevant work?**

**E. Does the evidence taken from the record as a whole does support the Defendant's decision that Plaintiff is not disabled?**

## DISCUSSION

**A. Assessing Plaintiff's Credibility and Crediting Plaintiff's Testimony**

Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony and failing to give clear reasons for not crediting Plaintiff's testimony. ECF No. 11 at 13-14. Plaintiff argues that the ALJ made a credibility assessment not based upon any clear or convincing evidence that constituted harmful and reversible error. *Id.* at 14. The Commissioner contends that Plaintiff provides no substantive argument or factual support for her assertion. ECF No. 12 at 4-5.

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004). However, subjective symptomology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomology alleged. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529(B), 416.929; SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 28, 2016).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's findings with regard to the claimant's credibility must provide clear and convincing reasons supported by

substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ conducts a two-step analysis to assess subjective testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant "'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Id.* (quoting *Smolen*, 80 F.3d at 1281-82). "If the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281, 1283-84). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted).

An ALJ may find a claimant's testimony not credible in part or in whole, but the ALJ may not disregard the claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence. *See* SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 28, 2016); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). In making a credibility determination, the ALJ may consider: (1) inconsistencies in the

claimant's testimony or between his testimony and his conduct; (2) the claimant's daily living activities; (3) the claimant's work record; and (4) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (superseded by statute in SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 28, 2016)).

The ALJ considered the medical evidence related to Plaintiff's medically determinable impairments. AR 26-27. She also considered the opinion evidence, and concluded that all "sources of records indicated a limited range of sedentary work except one opined a somewhat greater functional capacity." *Id.* at 27. Additionally, she gave great weight to the medical opinion of Dr. Smiley, noting that his opinion "adequately accounts for the claimant's testimony of progressively limiting symptoms as to exertion and postural activities." *Id.* at 28.

Based on the objective medical evidence Plaintiff provided, the ALJ found that Plaintiff's medically determinable impairments included three severe impairments: morbid obesity, degenerative disc disease with foot drop, and sleep apnea; as well as a depressive disorder. AR 21-22. The ALJ found that Plaintiff's medical evidence supported the conclusion that these medically determinable impairments could reasonably be expected to produce the symptoms that Plaintiff alleges. AR 26. However, the ALJ concluded that Plaintiff's statements of intensity, persistence, and the limiting effects of her symptoms were "not entirely

consistent with the medical evidence and other evidence in the record." *Id.* The ALJ proceeded to review Plaintiff's testimony and the medical record.

The ALJ considered Plaintiff's testimony that the worst symptoms keeping her from working were back-related problems, and found that physical exams revealed signs consistent with functional deficits, but not to the extent that all work would be precluded. AR 26. The ALJ also considered Plaintiff's testimony that she could sit for 20 to 30 minutes, and that she could move about for no more than 5 minutes at a time. *Id.* Plaintiff said that needing to move about more frequently had increased. *Id.* She said she could walk about a block and a half, and then rest for about a minute. *Id.* Following her gastric bypass surgery in October 2016, Plaintiff indicated that her back pain had increased. *Id.*

The ALJ found that the medical and opinion evidence revealed that Plaintiff's symptoms had increased in severity between 2011 and 2017. AR 26-27. However, the ALJ determined that Plaintiff's symptoms indicated that Plaintiff could perform a limited range of sedentary work. *Id.* at 27. The ALJ stated that she incorporated the limitations suggested by Plaintiff's testimony and Plaintiff's medical and opinion evidence into Plaintiff's RFC assessment. *Id.* at 27.

The Court finds that ALJ gave specific, clear, and convincing reasons for finding Plaintiff's testimony not entirely consistent with her objective medical records. The ALJ considered and credited Plaintiff's testimony, her treatment record, testimony from physicians, and objective medical evidence concerning the

nature, severity, and effect of Plaintiff's mental and physical conditions. Therefore, the Court finds the ALJ did not err in assessing Plaintiff's credibility.

## B. Assessing Plaintiff's Residual Functional Capacities

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC because the ALJ did not consider Plaintiff's physical limitations and absenteeism. ECF No. 11 at 14-15. Plaintiff also argues that the ALJ did not properly consider the opinion of Dr. David L. Pounds, Ph.D., a psychologist who examined Plaintiff in 2014. *Id.* at 16. The Commissioner contends that the ALJ properly considered all of these facts in assessing Plaintiff's RFC. ECF No. 12 at 12.

"Residual functional capacity" is defined as "what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 SSR LEXIS 5. "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p, 1996 SSR LEXIS 5 (emphasis in original). The Commissioner considers all of a claimant's medically determinable impairments, including impairments that are not found to be severe. 20 C.F.R. § 404.1545(a)(2). Social Security rulings require an ALJ to "consider and address medical source opinions" when assessing a claimant's RFC. *Little v. Berryhill*, 708 Fed. Appx. 468, 469 (9th Cir. 2018). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do

work-related activities." SSR 96-8p, 1996 SSR LEXIS 5. Although the ALJ need not have engaged in a function-by-function analysis for non-credible medical impairments, the ALJ should not ignore limitations supported by the record and already credited by the ALJ. *March v. Commissioner of Soc. Sec. Admin.*, 462 Fed.Appx. 671, 673 (9th Cir. 2011); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). However, where the ALJ's analysis regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, the Ninth Circuit does not require remand where the ALJ has failed to conduct the mandated function-by-function analysis. *Bayliss*, 427 F.3d at 1217.

The Ninth Circuit has held that, in determining residual functional capacity, in conjunction with the medical evidence, the ALJ must take into account the claimant's testimony regarding his capabilities. *Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012). The ALJ also must consider all relevant evidence, including medical records, lay evidence, and pain. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 1. Plaintiff's Physical Limitations and Absenteeism

As a general matter, an RFC assessment that fails to take into account a claimant's limitations is defective. *Leonard v. Colvin*, 633 Fed. Appx. 362, 363-64 (9th Cir. 2015) (finding that limiting claimant's use of ladders, ropes, and scaffolds

did not adequately address claimant's need for frequent trips to the bathroom). As the Court previously stated, the ALJ correctly determined that Plaintiff's medically determinable impairments included the three severe impairments: morbid obesity, degenerative disc disease with foot drop, and sleep apnea; as well as a depressive disorder. AR 21-22.

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's physical limitations and absenteeism. Based on the record in this case, the ALJ concluded that the RFC adequately reflected Plaintiff's expressed needs to change position frequently. *Id.* at 25. The ALJ also stated that the medical expert testimony of Dr. Jahnke and Dr. Smiley, as well the responses from Dr. Griffin, do not support Plaintiff's assertion that she would be off-task or that frequent absenteeism would occur. *Id.* at 30.

Although Plaintiff may disagree with the ALJ's assessment of the evidence, where evidence may support more than one rational interpretation, "the Court may not substitute its judgment for that of the Commissioner." *Tackett*, 180 F.3d at 1097. The ALJ's interpretation regarding Plaintiff's limitations is rational. Therefore, the Court finds that the ALJ properly considered Plaintiff's limitations associated with her medically determinable impairments in assessing Plaintiff's RFC.

### 2. *Opinion Testimony of Medical Source*

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the

claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Id.* at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996); *see also Bayliss*, 427 F.3d at 1216. An ALJ also may discredit physicians' opinions that are unsupported by the record as a

1   whole. *Batson*, 359 F.3d at 1195. Additionally, an ALJ may disregard a physician's

2   opinion because it does not contain a useful analysis of the claimant's abilities and

3   limitations. *See id.*

4       Dr. Pound saw Plaintiff once. AR 1085-89. Therefore, Dr. Pound qualifies as

5   an examining physician. The ALJ gave Dr. Pound's evaluation great weight to the

6   extent it was consistent with Plaintiff's other mental health evaluations. AR 23.

7   However, the ALJ gave little weight to the remainder Dr. Pound's opinion because

8   the ALJ found Dr. Pound's descriptors vague, and because the opinion was

9   inconsistent with Dr. Pound's unremarkable contemporaneous mental status exam,

10  which the ALJ found more consistent with the other mental health-related evidence

11  in the record. *Id.*

12      Therefore, the Court finds that the ALJ's first reason for rejecting the

13  remainder of Dr. Pound's opinion, that Dr. Pound's descriptive statements were

14  vague, is legally sufficient. *See Batson*, 359 F.3d at 1195. The Court also finds that

15  the ALJ's other reason for rejecting the remainder of Dr. Pound's opinion, that his

16  statements were inconsistent with his own evaluation and with the record as a whole,

17  is a legally sufficient reason. *See id.*; *see also Nguyen*, 100 F.3d at 1464. Thus, the

18  Court finds that the ALJ did not reversibly err in considering the opinion of Dr.

19  Pounds.

20  / / /

21  / / /

**C. Presenting Hypothetical Questions to the Vocational Expert**

Plaintiff argues that the ALJ erred in posing an incomplete hypothetical question to the vocational expert, because the hypothetical did not take into consideration Plaintiff's need for a supportive supervisor, anticipated absenteeism due to health concerns and treatment, and anticipated time spent off-task. ECF No. 11 at 17. The Commissioner argues that the ALJ did not err in her consideration of the testimonial or medical record, and, therefore, it was not necessary for the ALJ to include limitations stemming from Plaintiff's subjective complaints in the vocational hypothetical. ECF No. 12 at 13.

In Step Five of the sequential process, an ALJ may pose hypothetical questions to a vocational expert in order to determine whether employment opportunities exist in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work experience. "For the hypothetical to be complete, the ALJ need[s] to present all limitations that were supported by substantial evidence in the record." *Inman v. Colvin*, 669 Fed. Appx. 849, 850 (9th Cir. 2016). "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." *Embrey*, 849 F.2d at 423. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has residual working capacity has no

evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Hypotheticals posed to a vocational expert "must be upheld as long as they are supported by substantial evidence." *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

The ALJ posed the following hypothetical to the vocational expert:

> Please assume we have an individual between the ages of 27 and 33 with a high school education and with the past relevant work, the four jobs that we've decide upon.
>
> In this first hypothetical, we have an individual who could lift and carry up to 10 pounds occasionally, less than 10 pounds frequently; who could stand and walk for a total of up to two hours in an eight-hour workday, however [of] those two hours, the maximum amount standing or walking at one time would be limited to 15 minutes. Sitting would be up to six hours in an eight-hour workday. There would need to be a change in positioning for a few minutes at [at] least a 30-minute interval.
>
> This individual could rarely operate foot controls with the left lower extremity; could never climb ladders, ropes, or scaffolds; could never crawl; could occasionally climb ramps or stairs up to a flight, would need the use of a handrail; could occasionally balance, stoop, kneel, and crouch; would also need the occasional use of a handheld assistive device such as a cane.
>
> This individual would need to avoid all unprotected heights, all hazardous machinery, and should avoid the operational control of moving machinery[;] would also need to avoid concentrated exposure to airborne irritants such as fumes, odors, dust, gases, et cetera[;] would need to avoid exposure to extreme temperatures, both cold and heat[;] and should also avoid exposure to excessive wetness and humidity, as well as concentrated exposure to vibration.

AR 332.

The Court previously concluded that the ALJ did not err in weighing the objective evidence in the record, or in assessing Plaintiff's RFC. The ALJ's

1 hypothetical contemplated Plaintiff's subjective limitations, and were supported by

2 substantial evidence based upon the ALJ's determinations. *See id.* Therefore, the

3 Court finds that the ALJ did not err in posing the above hypothetical to the

4 vocational expert.

**D. Assessing Plaintiff's Ability to Perform Past Relevant Work**

6 Plaintiff contends that the ALJ erred in finding Plaintiff capable of performing

7 her past relevant work. ECF No. 11 at 11. However, Plaintiff did not provide any

8 legal or factual arguments specifically supporting this contention. It is not a

9 reviewing court's role to "do an appellant's work for it, either by manufacturing its

10 legal arguments, or by combing the record on its behalf for factual support."

11 *Western Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012).

12 Accordingly, when an "argument was not raised clearly and distinctly in the opening

13 brief, it has been waived." *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir.

14 2009). Therefore, the Court finds that Plaintiff has not demonstrated that the ALJ

15 erred in finding Plaintiff capable of performing her past relevant work.

**E. Considering Evidence Taken from the Record as a Whole**

17 Plaintiff also contends that the evidence taken from the record as a whole does

18 not support the ALJ's determination that Plaintiff is not disabled. ECF No. 11 at 11.

19 However, Plaintiff provides no legal or factual arguments specifically supporting

20 this contention, and the Court will not supply missing arguments. *See Western*

21 *Radio Servs. Co.*, 678 F.3d at 979. Therefore, the Court finds that Plaintiff has not

demonstrated that the ALJ erred in considering evidence taken from the record as a whole in this matter.

## CONCLUSION

Plaintiff argues that the ALJ's decision should be reversed and that the Court should find Plaintiff to be disabled and entitled to benefits. ECF No. 11 at 18. In the alternative, Plaintiff argues that the ALJ's decision should be reversed and remanded to the Commissioner to re-assess Plaintiff's RFC. *Id.*

The Court has found that Plaintiff has not demonstrated that the ALJ erred in finding that Plaintiff is not disabled. Therefore, the Court finds that summary judgment in favor of the Commissioner is proper. Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment**, ECF No. 12**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3. Judgment shall be entered in favor of Defendant.

The District Court Clerk is directed to enter this Order, enter judgment for Defendant, provide copies to counsel, and **close this case**.

**DATED** August 20, 2018.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge